IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GILBARCO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-352 |
| | ) | |
| TRONITEC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 13.) The Plaintiff, Gilbarco Inc., filed this action alleging the Defendant, Tronitec, Inc., is infringing its copyright in a software program known as V15.1.70. Tronitec contends it has insufficient contacts with the State of North Carolina to be haled into court in this State. Because Tronitec has sold products to customers in North Carolina for many years, regularly sends promotional e-mails to customers in North Carolina, advertises the allegedly infringing product on its website using Gilbarco's name, and has sold at least one allegedly infringing product to a North Carolina customer, the Court concludes it has specific jurisdiction over Tronitec.

**I. FACTUAL BACKGROUND**

The Court finds the following facts for the purposes of this Motion, viewing the evidence in the light most favorable to Gilbarco. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Gilbarco is a Delaware corporation with its principal place of business in Greensboro, North Carolina. (Doc. 1, Complaint, ¶1.) It owns the copyright to the V15.1.70 software

program, which is used in fuel dispenser chips. (Doc. 1 ¶¶ 7-10.) Tronitec is a Georgia corporation based in Marietta, Georgia. (*Id.* ¶ 2.) Tronitec supplies repaired service parts for fuel dispensing and point-of-sale transaction processing equipment used in retail service stations and convenience stores. (Doc. 14-1, Affidavit of Michael Futral, Sr., ¶ 3.) This includes repaired circuit boards containing chips with software programs used to run aspects of the fuel dispensers. (Doc. 1 ¶ 12.) Gilbarco has not authorized Tronitec to use its V15.170 software program. (*Id.* ¶ 13.)

The T19501-G1 and T19501-G2 circuit boards are the only repair boards supplied by Tronitec capable of accepting a chip incorporating the V15.1.70 software program. (Doc. 14-1 ¶ 5.) Tronitec began repairing and selling T19501-G1 circuit boards in 2003, and since that time Tronitec has sold a total of ninety-six T19501-G1 and T19501-G2 circuit boards (for a total of $18,912.50) that may use a chip with the V15.1.70 software. (*Id.*) Tronitec's website shows the T19501-G1 circuit board as for sale by Tronitec, specifically indicating that it is a Gilbarco product. (Doc. 1-2.)

One of these circuit boards was sold to a customer based in North Carolina on May 6, 2011, and shipped to South Carolina at the customer's request. (Doc. 14-1 ¶ 5.) Because Tronitec shipped the circuit board before service of process,[1] Tronitec was unable to determine if it actually contained the V15.1.70 software. (*Id.*) However, Gilbarco's evidence shows that Tronitec advertises on its website these circuit boards as containing the allegedly infringing software. (Doc. 1-2.) Giving the Plaintiff the benefit of reasonable inferences, the Court finds

---

[1] In a quirk of circumstance, this circuit board was sold by Tronitec on the same day that Gilbarco filed this action. The sale was to an established Tronitec customer and was not orchestrated by Gilbarco.

for purposes of this Motion that the board sold to the North Carolina customer contained the infringing software.

From 1999 until 2003, Tronitec had an independent sales representative responsible for sales in North Carolina and other states who was based in Charlotte. (Doc. 16-1, Second Affidavit of Michael Futral, Sr., ¶ 3.) This representative was not a Tronitec employee. (*Id.*) Tronitec otherwise had and has no employees, agents, representatives, or operations in North Carolina, is not licensed to do business in North Carolina, owns no property in North Carolina, and pays no taxes in North Carolina. (Doc. 14-1 ¶ 4.)

Tronitec has a number of customers in North Carolina, though most of its sales and customers are outside the State. (*Id.* ¶ 6.) Since January 1, 2007, seven hundred and sixty-one customers have placed orders with Tronitec for a product. (*Id.*) Of those, twenty-one are based in North Carolina. (*Id.*) During that same time period, 7.1% of Tronitec's invoiced sales for all products were made to North Carolina customers. (*Id.*) Nearly 70% of those North Carolina sales were to a single company, and about 47% of the sales made to that company were actually shipped to North Carolina. (*Id.*) The remaining 53% were shipped to South Carolina at the customer's instruction, including the lone circuit board that included the V15.1.70 software discussed above. (*Id.*)

Tronitec sends regular promotional e-mails to approximately seven hundred and sixty-one contacts approximately every sixty days. (*Id.* ¶ 8.) Of those seven hundred and sixty-one contacts, nine are in North Carolina. (*Id.*) None of the e-mail distributions have promoted any board containing the V15.1.70 software. (*Id.*) The record is silent as to whether any of these e-mails promoted Tronitec's website or shopping cart function.

The shopping cart function on Tronitec's website has been available since at least 2004 by Gilbarco's evidence (Doc. 15-2; Doc. 15-3), which the Court accepts for purposes of this Motion. The shopping cart function does not allow all customers to complete a purchase online. (Doc. 14-1 ¶ 9.) Instead, if a customer adds an item to his or her shopping cart, and completes the checkout procedure, an order confirmation is e-mailed to the customer and to the Tronitec sales team. (*Id*.) If the customer has an account or has a credit card number on file with Tronitec, the sales representative will accept the order. (*Id.*) Otherwise, the customer is contacted by phone to complete the transaction. (*Id*.)

Less than 1% of Tronitec's total revenues come from sales initiated online. (*Id*. ¶ 10.) None of those online-initiated sales were shipped to North Carolina, although a few sales (representing approximately 0.016% of Tronitec's total sales during that time period) were billed to a customer in North Carolina for shipment elsewhere. (*Id*.) Tronitec has not yet sold any of the infringing circuit boards via the Internet. (*Id.*)

## II. OVERVIEW OF PERSONAL JURISDICTION LEGAL STANDARDS

The Plaintiff has the burden "to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs,* 886 F.2d at 676. When a court examines personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing" of personal jurisdiction. *Id*. The court must "construe all relevant pleading allegations in the

4

light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

"[I]n order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "The question, then, is whether a defendant's contacts with the forum state are so substantial that they amount to a surrogate for [physical] presence and thus render the exercise of sovereignty just." *ESAB Grp., Inc., v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

The North Carolina long-arm statute gives "to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977); *accord Red Bull GmbH v. RLED, LLC*, 515 F. Supp. 2d 641, 647 (M.D.N.C. 2007). The analysis, then, "coalesces into the question of whether [the defendant] has sufficient minimum contacts" with North Carolina. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). The court must determine "whether the defendant has such 'minimal contacts' with the forum state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Christian Sci. Bd. of Dirs.*, 259 F.3d at 215 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Opinions since *International Shoe* "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at

5

home in the forum State." *Id*. (*quoting Int'l Shoe,* 326 U.S. at 317). "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 HARV. L. REV. 1121, 1136 (1966)).

## III. ANALYSIS

Gilbarco contends that the nature and extent of Tronitec's sales activities in North Carolina are sufficient to establish general jurisdiction. Gilbarco further contends that the sale of one circuit board to a North Carolina customer that infringed its copyright is sufficient to give rise to specific jurisdiction and, in the alternative, that Tronitec's interactive website supports specific jurisdiction.

*A. General Jurisdiction*

"To establish general jurisdiction over the defendant, the defendant's activities in the State must have been continuous and systematic, a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan,* 293 F.3d at 712 (internal quotation marks omitted). "[A]ttenuated connections" that do not rise to the level of "continuous and systematic general business contacts" are insufficient. *Goodyear Dunlop Tires*, 131 S. Ct. at 2857. Nor are a small number of sales to customers within the forum state adequate to impart personal jurisdiction. *ESAB Grp.*, 126 F.3d at 624 (holding no general jurisdiction available for a defendant with twenty-six customers in forum state which make up less than 1% of its nationwide sales volume).

Tronitec has no office, employees, or agents in North Carolina. It owns no property in the state, and has no business relationship with Gilbarco. Less than 10% of Tronitec's sales are to North Carolina companies. It regularly sends promotional e-mails to nine customers in North

6

Carolina as part of a wider e-mail campaign, and it has a sales presence on the Internet available to North Carolina residents.

A relatively small number of sales to North Carolina companies and nine e-mails every sixty days do not constitute the kind of "continuous and systematic" presence that reaches the level of being "at home" in North Carolina. *See Goodyear Dunlop Tires*, 131 S. Ct. at 2857; *see also Baker v. Patterson Med. Supply, Inc*., No. 4:11cv37, 2011 U.S. Dist. LEXIS 152926, at *21-22, 22 n.8 (E.D. Va. Nov. 17, 2011), *aff'd*, 2012 U.S. Dist. Lexis 14733 (E.D. Va., Feb. 3, 2012) (holding that distribution of unknown number of catalogues in forum state and maintenance of a website do not give rise to the exercise of jurisdiction). Therefore, the Court does not have general jurisdiction over Tronitec.

### B. Specific Jurisdiction

Specific jurisdiction exists when the "suit aris[es] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To determine the existence of specific jurisdiction, a court considers: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712; *see also Goodyear Dunlop Tires*, 131 S. Ct. at 2854. "If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the court] move on to a consideration of prongs two and three." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

While the analysis is not a mechanical one, the Fourth Circuit has summarized the factors the courts have considered in deciding whether a defendant "purposely availed" itself of the privilege of doing business in a state. *Id.* Those factors include:

- whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957);
- whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);
- whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221, 78 S. Ct. 199; *Burger King*, 471 U.S. at 475-76, 105 S. Ct. 2174;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475-76, 481, 105 S. Ct. 2174;
- whether the parties contractually agreed that the law of the forum state would govern disputes, *see Burger King,* 471 U.S. at 481-82, 105 S. Ct. 2174;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985);
- the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith*, 901 F.2d at 39; and
- whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc*., 696 F.2d 311, 314 (4th Cir. 1982).

*Id.*

When specific jurisdiction is asserted based on electronic activity by the defendant, due process requires that "specific jurisdiction in the Internet context . . . be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [the forum state]." *ALS Scan*, 293 F.3d at 714. Advertising an infringing product on a website that can be viewed in the forum state is insufficient by itself to establish specific jurisdiction based on electronic activity. *See, e.g*., *Bensusan Rest. Corp. v.*

8

*King*, 937 F. Supp. 295, 299 (S.D.N.Y. 1996) ("The mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling, or otherwise making an effort to target its product in [the forum state]."), *aff'd*, 126 F.3d 25 (2d Cir. 1997).

Here, Tronitec has done substantially more than offer its products for sale online. It regularly sells to North Carolina customers in traditional ways, and regularly ships products into North Carolina. It regularly markets itself to North Carolina customers via promotional e-mails. It maintains a website that falls somewhere between "interactive" and "passive" and that allows existing customers to place orders via e-mail and new customers to initiate orders that can be completed by telephone calls. Tronitec has made sales in North Carolina as a result of the website, and, however small the number, those sales have been deliberate and purposeful. Finally, it has directly sold at least one infringing product to a North Carolina customer, and its website specifically mentions that the allegedly infringing product is a Gilbarco board. Based on these findings, the Court concludes that Tronitec has purposely availed itself of the privilege of doing business in North Carolina because its activities created a "substantial connection" with North Carolina. *See ESAB Grp.*, 126 F.3d at 625.

The exercise of personal jurisdiction over Tronitec would be constitutionally reasonable, considering the burdens on and interests of the parties. *See Consulting Eng'rs Corp.*, 561 F.3d at 279. The burden on Tronitec to defend this case in North Carolina is not substantial, as it is located in a nearby state, and no doubt much of the discovery in the case will take place in North Carolina wherever the case is tried. Therefore the Court concludes that exercise of jurisdiction is constitutionally reasonable.

This leaves the question of whether Gilbarco's claims "arise out of those activities directed at the forum." *Consulting Eng'rs Corp.*, 561 F.3d at 278. The issue is whether Gilbarco's copyright infringement claim "arises out of" Tronitec's sale of an allegedly infringing product to a North Carolina customer.

In patent cases, most courts hold that if the defendant deliberately did business with a customer in the forum state and sold an infringing product to a customer in that state, then the cause of action arises out of the sale. *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994);[2] *Tristrata Technology, Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 640 (D. Del. 2008); *see also Netalog, Inc. v. Tekkeon*, No. 1:05CV00980, 2007 U.S. Dist. LEXIS 10845, at *9 (M.D.N.C. Feb. 15, 2007) (holding that where Defendant "offered for sale . . . an allegedly infringing product to a resident of North Carolina" then plaintiff "has shown that this action arises out of the Defendant's contact with the forum state"). In other contexts, courts in copyright cases routinely hold that copyright infringement occurs where the sale occurs. *See, e.g., Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, No. 10-cv-508, 2011 U.S. Dist. LEXIS 131325 *36 (M.D.N.C. Nov. 14, 2011) (reaffirming that copyright infringement "usually occurs where the tortfeasor sells the infringing content"); *see generally LiteCubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) (noting in another context that infringement occurs where the buyer is located).

---

[2] After stating its holding, the Federal Circuit went on to discuss some of the variations on the "stream of commerce" theory of specific jurisdiction as part of rejecting the defendant's argument. For purposes of this case, the Court need not parse the degree to which the "stream of commerce" theory applied in *Beverly Hills* is consistent or inconsistent with Fourth Circuit precedent in the same area, or of how the decision in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011) might apply. The ruling in *Beverly Hills* on the issue of whether the patent infringement cause of action "arose out of" a sale within the jurisdiction did not turn on the specifics of any particular stream-of-commerce test. *See Beverly Hills*, 21 F.3d at 1565-58.

Because Tronitec sold an infringing product to a customer in North Carolina, the infringement occurred in this state and the cause of action arises out of Tronitec's contacts with the state. Moreover, Tronitec's website specifically states that the infringing circuit board is a Gilbarco product, thus directly naming and connecting itself to this North Carolina company in relationship to the infringing product. *See generally ALS Scan*, 293 F.3d at 714 (holding that specific jurisdiction may be based on a foreign defendant's Internet activity directed at the forum state and causing an injury that gives rise to a potential claim in the forum state). The Court concludes that Gilbarco's claims arise out of Tronitec's activities directed at North Carolina.

Cases cited by the defendant are distinguishable. For example, in *Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 513 (W.D. Va. 2007), the court held that a single sale to a customer in forum state combined with a few other communications to forum state potential customers is not sufficient to exercise specific jurisdiction, but based this decision on the lack of purposeful availment. This was also the case in *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004), a patent infringement case in which the court held that two Internet sales to plaintiff's acquaintances in forum state were not enough to exercise specific jurisdiction. In this case, as noted above, Tronitec has done more than sell one infringing product in North Carolina; it has purposely availed itself by making a number of sales over many years to North Carolina customers, shipping products into the state, and specifically directing promotional e-mails to North Carolina customers.

Because Tronitec purposefully availed itself of the benefits and privileges of the forum state, because the exercise of jurisdiction over Tronitec in North Carolina is reasonable and fair, and because the copyright cause of action arises out of Tronitec's activities directed at North Carolina, the Court has specific jurisdiction over Tronitec.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED**, that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 13) is **DENIED**.

This the 26th day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE